UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

SADIEL GONZALEZ,

    Plaintiff,

v.

UNITED STATES OF AMERICA,

    Defendant.

No. 6:18-CV-265-REW

OPINON & ORDER

\*\*\* \*\*\* \*\*\* \*\*\*

In this *pro se* matter, Plaintiff (and federal inmate) Sadiel Gonzalez claims a violation of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-80, based on an allegedly botched bullet removal surgery.[1] *See* DE 1 (Complaint); 19 (Order). Post service, the Government sought dispositive relief. *See* DE 26 (Motion to Dismiss or for Summary Judgment). After some procedural maneuvering,[2] Gonzalez responded. *See* DE 35; *see also* DE 37 (Order granting supplement); DE 36 (Motion to Supplement). The Government replied. DE 40 (Reply). The matter is fully briefed and ripe for review.

**I.**    **BACKGROUND**

---

[1] Gonzalez first named Dr. Tommy W. Shelton (identified as the surgeon who treated Gonzalez at the Lake Cumberland Regional Hospital) as the sole case Defendant. *See* DE 1. However, Plaintiff, at the Court's prompting pertinent to jurisdictional concerns, subsequently filed a notice confirming his intent to pursue an FTCA claim against the United States (rather than a medical negligence claim against Dr. Shelton). DE 18 (Notice). The Court thus directed the Clerk to substitute the United States as Defendant. DE 19.

[2] Gonzalez twice sought to amend his complaint, first to add constitutional claims against Dr. Shelton, *see* DE 29, then to add state law medical negligence claims against Shelton, *see* DE 33. The Court dismissed Plaintiff's first amended complaint, fileable as a matter of right, on initial screening. *See* DE 31 (Opinion & Order). The Court denied a subsequent amendment request as futile. *See* DE 34. Gonzalez's original complaint, DE 1, (as modified by DE 18, *see* DE 19) remains the operative pleading. *See* DE 31.

1

Gonzalez's claims concern a May 20, 2016, operation performed by Dr. Tommy Shelton at Lake Cumberland Regional Hospital. DE 1 at 3. The surgical goal? To remove bullet fragments from Plaintiff's left axilla. *Id*. Per Gonzalez, medical records indicate that Dr. Shelton identified the fragments, removed them, and that "no further remnants were identified." *Id*. However, Plaintiff's pain persisted post-surgery. And, a subsequent x-ray revealed that Dr. Shelton either failed to fully removed the fragments or left behind some foreign object. *Id*. at 4 (claiming x-rays showed "a 7mm radiodense foreign body in [his] left upper chest wall area"). Thus, Gonzalez concludes, Dr. Shelton negligently left the bullet, fragments of the bullet and/or some foreign unidentified object in his left axilla, causing pain, suffering, numbness, nausea and sickness from medication. *Id*. Based on these allegations, Gonzalez asserts a tort claim against the United States under the FTCA. *See* DE 18.

The Government, arguing Gonzalez's FTCA claim is time barred[3] or, given the FTCA's contractor exception, fails to establish a viable issue for trial, seeks summary judgment. *See* DE 26.

---

[3] The United States frames its motion as partly alleging a jurisdictional defect. *See* DE 26-1 at 4. However, per the Supreme Court, "the FTCA's time bars are nonjurisdictional[.]" *United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1638 (2015). Thus, the Court sees no need to address any issue presented at the jurisdictional threshold.

## II. LEGAL STANDARDS[4]

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A reviewing court must construe the evidence and draw all reasonable inferences from the underlying facts in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986); *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009). Additionally, the court may not "weigh the evidence and determine the truth of the matter" at the summary judgment stage. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986).

The burden of establishing the absence of a genuine dispute of material fact initially rests with the moving party. *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986) (requiring the moving party to set forth "the basis for its motion, and identify[] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate an absence of a genuine issue of material fact"); *Lindsay*, 578 F.3d at 414 ("The party moving for summary judgment bears the initial burden of showing that there is

---

[4] Though the Government alternatively seeks Rule 12 relief, both parties repeatedly reference (and tender) matters outside the pleadings. Thus, the Court treats the motion "as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Defendant's motion is specifically captioned as one alternatively seeking summary judgment. *See* DE 26-1 at 1. The filing expressly addresses the summary judgment standard and notes that "Defendant is providing documents outside of the scope of the initial pleadings[.]" DE 26-1 at 10. In such circumstances, the Sixth Circuit has found Rule 12(d)'s requirement that parties "be given a reasonable opportunity to present all the material that is pertinent to the motion" satisfied without need for separate notice. *See Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010); *Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004) (finding that "the district court did not act *sua sponte* in converting the motion to dismiss to a summary judgment motion" because defendants "moved for summary judgment in the alternative" and noting that plaintiffs "responded to the summary judgment motion by submitting materials outside the pleadings"); *see also* DE 18-1, 35-1 & 36-1 (Pl.'s various tendered exhibits). If there were any doubt that Gonzalez's was on notice of possible Rule 56 consideration, Plaintiff's responsive recitation of the summary judgment standard would resolve it. DE 35 at 2 (citing *Anderson*, 106 S. Ct. at 2511).

no material issue in dispute."). If the moving party meets its burden, the burden then shifts to the nonmoving party to produce "specific facts" showing a "genuine issue" for trial. *Celotex Corp.*, 106. S. Ct. at 2253; *Bass v. Robinson*, 167 F.3d 1041, 1044 (6th Cir. 1999). However, "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 106 S. Ct. at 2552; *see also id.* at 2557 (Brennan, J., dissenting) ("If the burden of persuasion at trial would be on the *non-moving* party, the party moving for summary judgment may satisfy Rule 56's burden of production in either of two ways. First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim. Second, the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." (emphasis in original)).

A fact is "material" if the underlying substantive law identifies the fact as critical. *Anderson*, 106 S. Ct. at 2510. Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A "genuine" issue exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 2511; *Matsushita Elec. Indus. Co.*, 106 S. Ct. at 1356 ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'") (citation omitted). Such evidence must be suitable for admission into evidence at trial. *Salt Lick Bancorp v. FDIC*, 187 F. App'x 428, 444–45 (6th Cir. 2006).

For the following reasons, under the applicable standards, and on full review, the Court finds that the record shows no triable issue as to any FTCA-cognizable tortious conduct and grants Defendant's motion.

### III. DISCUSSION

As to the sole pleaded claim, the Court finds that the Government is entitled to summary judgment based on the FTCA's "contractor" exception. The complaint makes clear that Gonzalez ascribes fault for his injuries to the alleged negligence (or "deliberate indifference") of "Dr. Tommy W. Shelton[.]" DE 1 at 2, 4. The FTCA's waiver of sovereign immunity is limited to claims for injuries "caused by the negligent or wrongful act or omission of *any employee of the Government* while acting within the scope of his office or employment." 28 U.S.C. § 1346(b) (emphasis added); *see United States v. Orleans*, 96 S. Ct. 1971, 1975 (1976). Defendant argues that Dr. Shelton is not a federal government employee and, thus, the FTCA's restricted waiver does not extend to Gonzalez's claim. *See* DE 26-1 at 8–10. The Court, for the following reasons, agrees.

The Act defines "[e]mployee of the government" to include "officers or employees of any federal agency" (such as the BOP) but expressly excludes "any contractor with the United States" from the definition of "federal agency." 28 U.S.C. § 2671. Thus, sovereign immunity bars claims against the United States premised on the conduct of a contractor. *See Orleans,* 96 S. Ct. at 1976 ("Since the United States can be sued only to the extent that it has waived its immunity, due regard must be given to the exceptions, including the independent contractor exception, to such waiver.") (citation omitted); *Logue v. United States,* 93 S. Ct. 2215, 2219 (1973); *Berrien v. United States*, 711 F.3d 654, 658 (6th Cir. 2013) ("The contractor exception precludes FTCA liability for any negligence by any [Government] contractors[.]"); *Blakely v. United States*, 276 F.3d 853, 864 (6th

5

Cir. 2002) ("The circumstances of the waiver of sovereign immunity must be scrupulously observed and not expanded by the courts." (citation, quotation marks, and alterations omitted)).

"A critical element in distinguishing an [employee] from a contractor is the power of the Federal Government 'to control [the individual's] detailed physical performance[.]'" *Orleans*, 96 S. Ct. at 1976 (quoting *Logue*, 93 S. Ct. at 2219)). "Courts have generally applied these principles to private physicians working under contractual relationships with government owned facilities to conclude that these physicians are independent contractors, not government employees." *Davis v. United States*, No. 08-CV-184-ART, 2009 WL 1360658, at *5 (E.D. Ky. May 13, 2009) (collecting cases).

Gonzalez does not dispute Defendant's characterization of Dr. Shelton as an independent contractor. Indeed, Gonzalez himself identified Dr. Shelton as a "contract physician." *See* DE 29 at 3. Further, Gonzalez did not respond to Defendant's contention that the contractor exception bars his claim. Typically, "a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." *Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) (collecting cases); *see also Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 405 (6th Cir. 1992) (a non-moving party's burden to respond to a motion for summary judgment "is really an opportunity to assist the court in understanding the facts. But if the non-moving party fails to discharge that burden—for example, by remaining silent—its opportunity is waived and its case wagered."); *but see Evans v. Plummer*, 687 F. App'x 434, 446 (6th Cir. 2017). That is not precisely the case here, as Gonzalez did respond to one of Defendant's two arguments. Nonetheless, the Court may deem an unopposed fact admitted. Fed. R. Civ. P. 56(e)(2).

The Court applies forgiving rigor to and liberally construes *pro se* filings. *Davis v. Prison Health Servs.*, 769 F.3d 433, 437–38 (6th Cir. 2012). However, the Court will not "conjure allegations on a litigant's behalf." *Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001); *see also Coleman v. Shoney's, Inc.*, 79 F. App'x 155, 157 (6th Cir. 2003) ("Pro se parties must still brief the issues advanced with some effort at developed argumentation."). With no response by Gonzalez, the Court can only do so much. The Government filed a well-supported argument that the contractor exception should apply.[5] Gonzalez chose not to meet that argument. Rule 56 does not impose on the Court an obligation to mine the record or law for posable opposing theories. The undisputed record shows that the "Government was not performing the work, and [Dr. Shelton] was not under its supervision or control." *Gowdy v. United States*, 412 F.2d 525, 534 (6th Cir. 1969); *see Logue*, 93 S. Ct. at 2219 (citing *Gowdy* as an exemplar of the "traditional distinction between employees of the principal and employees of an independent contractor"). The Court, on this record, finds no genuine dispute regarding Dr. Shelton's independent contractor status. Thus, Gonzalez's claim premised on Shelton's alleged negligence is not cognizable under the FTCA.

*Novel Claim*

Gonzalez, at the eleventh hour, (again) attempts to re-characterize his theory. *See* DE 35 at 3. Seeking to shift blame from Dr. Shelton, as originally pleaded, Gonzalez now claims that BOP staff received a pre-operative treatment plan from Lake Cumberland Regional Hospital prescribing a chest x-ray review "to MAKE SURE we noted the exact location and there is not further foreign

---

[5] *See, e.g.*, DE 26-1 at 8–10; DE 26-2 at ¶ 3 (Decl. of Rhonda Jones, BOP Health Services Administrator, representing that "Dr. Tommy Shelton is not an employee" of the BOP, that "Dr. Shelton performed the" May 20, 2016, surgery "at Lake Cumberland Regional Hospital pursuant to a contract USP McCreary has with Seven Corners, Inc.[,]" and that "USP McCreary does not have the authority to directly control the conduct, management or actions of" contracted medical personnel).

bodies[.]" *Id.* at 2. Plaintiff contends that "BOP medical staff should have performed the" Hospital's pre-op plan and that he "suffered injury due to the negligence of the BOP staff [in] failing to follow the appropriate treatment plan and review [his] chest x-ray [before the] operation[.]" *Id*. at 2–3.

The Court need not reach the merits of this last-ditch case recasting for two reasons. First, Gonzalez debuted this theory only in response to Defendant's motion. It is generally improper for a litigant—with knowledge of all facts undergirding a given claim in time to either include it in an initial pleading or pursue timely amendment—to assert an unpleaded claim for the first time in response to a Rule 56 motion. *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 789 (6th Cir. 2005) (affirming district court's refusal to consider claims never pleaded and advanced for the first time in response to a summary judgment motion). The relevant facts "were within [Gonzalez's] knowledge well before [he] filed [his] complaint in" this Court. *Tucker*, 407 F.3d at 789. Gonzalez had the medical record on which he premises his novel claim when he filed his administrative tort claim. *See* DE 18 (describing attached documents as the "[a]dministrative [t]ort claim [a]gainst the United States"); DE 18-1 at 37 (describing the "Treatment Plan [f]rom Lake Cumberland"). Gonzalez has thrice modified or attempted to modify his claims. *See* DE 18, 29 & 33. The record reveals no excuse for Gonzalez's failure to timely (originally or via amendment) plead this claim. Thus, the Court need not consider the claim's merits. *See Tucker*, 407 F.3d at 789 (concluding, despite record support for a potentially "colorable . . . argument[,]" that the trial court "did not err in refusing to consider the merits").

Even if the Court considered the Defendant's counter-argument an implicit agreement "to litigate fully an issue not raised in the original pleadings[,]"[6] Gonzalez's failure to administratively

---

[6] *Stemler v. City of Florence*, 126 F.3d 856, 872 (6th Cir. 1997).

8

exhaust the recently materialized claim would likewise foreclose a merits analysis. Gonzalez's administrative filing alleged negligence based solely on Dr. Shelton's conduct[7] relative to the surgery. *See* DE 18-1 at 3–5. Gonzalez's BOP pleading does not allege pre-operative negligence or even mention Lake Cumberland Regional Hospital's pre-operative treatment plan. *Id*. Thus, Gonzalez did not meet his statutory exhaustion obligation on the fresh theory. *See* 28 U.S.C. § 2675(a) ("An action shall not be instituted upon a claim against the United States for money damages for . . . personal injury . . . unless the claimant shall have first presented the claim to the appropriate Federal agency[.]"); *Davis*, 2009 WL 1360658, at *6 ("Although an administrative claim need not propound every possible theory of liability in order to satisfy section 2675(a) . . . a plaintiff cannot present one claim to the agency and then maintain suit on the basis of a different set of facts.") (quoting *Roma v. United States*, 344 F.3d 352, 362 (3d. Cir. 2003)).

Additionally, summary judgment would also be appropriate on the merits. The FTCA provides for Government liability, where appropriate, "in the same manner and to the same extent as a private individual under like circumstances[.]" 28 U.S.C. § 2674. Thus, the law of the state where the tort occurs controls. *See Rayonier Inc. v. United States*, S. Ct. 374, 376 (1957). "In order to state a cause of action based on negligence under Kentucky law, a plaintiff must establish the

---

[7] Gonzalez's administrative attachment does baldly allege that "USP-McCreary along with the surgeon w[ere] grossly negligent[.]" DE 18-1 at 5. However, nothing in the administrative filing hints of a connection between this desultory legal contention and the new theory described in the response. Indeed, the factual allegations in Gonzalez's initial claim do not even suggest BOP misfeasance or nonfeasance. Just the opposite. Factually, Gonzalez asserted that BOP "scheduled several outside appointment[s] as a result of my complaints of episodic pain" and that when Gonzalez's pain persisted post-surgery "USP-McCreary performed an x-ray that substantiated that the 'bullet' ha[d not] been removed in its entirety and/or Dr. Shelton left surgical tools in [Plaintiff's] axilla." DE 18-1 at 5. Gonzalez's depiction of BOP as an arranger of outside care and ex post discoverer of such care's alleged inadequacy plainly did not provide notice "sufficient to enable [BOP] to investigate" an allegation that Bureau staff were somehow responsible for (and deficient in) ensuring compliance with an (unmentioned) pre-surgery plan. *Glarner v. U.S. Dep't of Veterans Admin.*, 30 F.3d 697, 700 (6th Cir. 1994).

following elements: '(1) a duty on the part of the defendant; (2) a breach of that duty; and (3) consequent injury.'" *Matthews v. Robinson*, 52 F. App'x 808, 809 (6th Cir. 2002) (quoting *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 247 (Ky. 1992)). In the Commonwealth, "a plaintiff alleging medical malpractice must prove that a medical provider failed to adhere to the standard of care of a reasonably competent practitioner in the same medical field, proximately causing the plaintiff injury." *Id.* at 809–10 (citing *Reams v. Stutler*, 642 S.W.2d 586, 588 (Ky. 1982)).

Plaintiff's newfangled theory relies on, in Gonzalez's own words, a "treatment plan from Lake Cumberland Regional Hospital[.]" *See* DE 35 at 2 (citing DE 35-1 at 6). Plaintiff entirely fails to explain why a reasonable juror could find BOP staff liable for an alleged failure to comply with, again as Gonzalez describes it, a "[p]re-operation treatment plan prescribed by Lake Cumberland Regional Hospital[.]" *Id.* No BOP employee operated on Gonzalez, and the surgery was not performed at a BOP facility. Rather, "Lake Cumberland Surgery Specialists" developed the subject treatment plan. DE 18-1 at 37. Dr. Shelton did not operate on Gonzalez at a BOP facility; the procedure took place at an independent hospital. At bottom, Plaintiff's claim (at least as to the existence of a duty) rests entirely on two pieces of record proof: (1) BOP Nurse Practitioner Pamela Kenney's partial reproduction of the "Treatment Plan [f]rom Lake Cumberland Surgery Specialists" 4 months prior to the operation in one of Gonzalez's BOP medical records, *see* DE 18-1 at 37; and (2) Plaintiff's own self-serving interpretation of this record as establishing a BOP duty to ensure compliance with a plan for a treatment, *i.e.*, the surgery that BOP did not provide, *see* DE 35 at 2–3.

The Court, if the claim were properly presented, would find that no reasonable juror could, on this record, conclude that the BOP Nurse Practitioner had a duty to carry out the independent

10

surgical team's treatment plan. Critically, Gonzalez offers no proof, beyond his say-so, that the hospital intended for BOP to implement the pre-operative surgical plan. No reasonable juror could read the relevant document as Plaintiff wishes. FNP Kenney begins the "administrative note" by stating that Gonzalez was seen by "Lake Cumberland Surgery Specialists" related to the bullet in his left axilla. DE 18-1 at 37. She explains that the "[t]reatment plan per the Surgical Specialists is to remove the foreign body in the Operating Room under [f]luoroscopy." *Id.* Kenney concludes by noting her intent to "order [a] new consult[ation] for removal of [the] foreign body[.]" *Id.* Kenney then requests just that. *Id.* The language Gonzalez relies on appears only in the section explaining the reason for that request. *Id.* This is an exact duplicate of the hospital surgeon's plan. *See* DE 18-1 at 18. The hospital's plan was not the BOP's obligation or duty.

Essentially, Plaintiff believes that reporting the content of the independent "Surgical Specialists" treatment plan was enough to place the burden of compliance on Kenney. Yet, under Gonzalez's reasoning, Kenney would also be on the hook for the other reported portion of that plan, *i.e.*, surgery to remove the bullet. Gonzalez does not go this far, but the logic of the reading he poses leads inexorably to that result. The Court finds that no reasonable juror would take this interpretive path. Again, it is undisputed that BOP had no authority to dictate Dr. Shelton's surgical conduct. The BOP sent Gonzalez out for the treatment, which clashes with this illogical late theory. The Court sees no genuine dispute, on this record, that BOP personnel were responsible for pre-operative review of x-rays aimed at ensuring precision in a surgery that BOP did not perform and had no authority to control. Gonzalez's complaint targeted the behavior of the surgeon alone. *See* DE 1 at 4 (declaring 3 acts of malpractice by "Dr. Tommy W. Shelton"). The tardy liability expansion effort fails.

Thus, Gonzalez fails to present evidence sufficient "to permit a layman with general knowledge to recognize medical malpractice" on the facts alleged, and Plaintiff "did not retain or employ any expert witness to testify in support of his medical malpractice claim." *Matthews*, 52 F. App'x at 810.[8] The Court, on each of these cascading bases, finds summary judgment for the Government on Gonzalez's newfound claim appropriate.

*Statute of Limitations*

Lastly, Gonzalez's complaint is untimely and equitable tolling is, on Plaintiff's proof and argument, unwarranted. The FTCA sets specific time limits for tort claims against the United States:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b). The Government contends that Gonzalez failed to file suit within six months of the BOP's denial of his administrative claim and that the complaint is thus time barred. *See* DE 26-1 at 5–7.

Plaintiff correctly concedes that he failed to file within 6 months of the BOP's November 30, 2017, formal denial.[9] *See* DE 35 at 3; *see also Jackson v. United States*, 751 F.3d 712, 717 (6th Cir. 2014) ("The FTCA unambiguously states that the six-month limitation window runs 'from the

---

[8] The Sixth Circuit recently distinguished *Matthews* on the grounds that "the prisoner in that case did not file a Rule 56(d) motion and affidavit in response to the government's motion." *Bunche v. United States*, No. 17-6190, 2018 WL 4959029, at *4 (6th Cir. June 20, 2018). Here, like *Matthews* and unlike *Bunche*, Gonzalez has filed no such motion or affidavit.

[9] Plaintiff, as an exhibit to his notice clarifying the complaint (*see* DE 18), filed the relevant letter. *See* DE 18-1 (letter dated November 30, 2017, advising Gonzalez that his claim was denied and stating: "If you are not satisfied with our determination in this matter, you may file suit in the appropriate U.S. District Court no later than six months from the date of this letter.").

12

date of mailing'" and does not "require that the claimant receive the denial letter in order to commence the six-month limitation period.") (citations omitted). Gonzalez's September 8, 2018,[10] complaint came well after the June 1, 2018, deadline. Plaintiff's complaint is facially untimely. *See* 28 U.S.C. § 2401(b).[11]

Gonzalez seeks equitable tolling to excuse the tardy filing. The FTCA limitations period may, under appropriate circumstances, be equitably tolled. *Kwai Fun Wong*, 135 S. Ct. at 1638; *Jackson*, 751 F. 3d at 718–19. Equitable tolling is permissible "when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010). In suits against the Government, however, tolling is allowed "sparingly, and not when there has only been a garden variety claim of excusable neglect." *Chomic v. United States*, 377 F.3d 607, 615 (6th Cir. 2004) (quotation marks omitted). The Sixth Circuit provides the following factors for evaluating tolling propriety:

(1) the plaintiff's lack of notice of the filing requirement;
(2) the plaintiff's lack of constructive knowledge of the filing requirement;
(3) the plaintiff's diligence in pursuing [his] rights;
(4) an absence of prejudice to the defendant; and
(5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement.

---

[10] The Court's treatment gives Gonzalez the benefit of his complaint signature date (despite the October 18, 2018, filing). *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) ("[A] pro se prisoner's complaint is deemed filed when it is handed over to prison officials for mailing to the court. Cases expand the understanding of this handing-over rule with an assumption that, absent contrary evidence, a prisoner does so on the date he or she signed the complaint." (citations omitted)). To be clear, the fact that **40 days** elapsed between Gonzalez's purported signature date and the Clerk's receipt of the document is strong evidence that the signature-handover-date presumption is inapplicable. This additionally supports the Court's timeliness conclusion. However, given that Gonzalez's filing would be untimely even if filed on September 8, 2018, the Court frames the analysis without resort to this additional proof of tardiness.
[11] This analysis, of course, applies with even greater force to Gonzalez's rejiggered claim, newly minted on November 25, 2019. *See* DE 35.

*Zappone v. United States*, 870 F.3d 551, 556 (6th Cir. 2017) (citation and quotation marks omitted). A plaintiff faces the burden to justify equitable tolling. *Robertson*, 624 F.3d at 784.

The BOP's denial letter expressly advised Gonzalez that he had to file suit within six months. *See* DE 18-1 at 1. Plaintiff acknowledges receipt of same on December 8, 2017. *See* DE 35 at 3. Thus, the first, second, and fifth factors weigh against equitable tolling. *See Truitt v. County of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998).

Regarding the third factor, Gonzalez argues various impediments thwarted his diligent efforts to pursue the claims and that he was unable to "ascertain the complete details as to whom may be liable" for his "ongoing pain and suffering" until he received medical records in July 2018. *See* DE 35 at 3. Yet, Gonzalez's complaint simply and fully mirrors the allegations contained in his administrative claim. *Compare* DE 1, *with* DE 18-1 at 3–5.[12] Both the administrative filing and federal complaint blame Dr. Shelton's alleged failure to completely remove the bullet fragments and/or other objects from Gonzalez's left axilla. Given that Plaintiff clearly understood the factual predicates for his claim when he administratively filed, Gonzalez's assertions regarding

---

[12] Indeed, the verbiage of Gonzalez's administrative "Basis of Claim" Form, *see* DE 18-1, is repeated, nearly verbatim, in Gonzalez's complaint. *See* DE 1 at 3.

obstruction and need for records fail to show diligence.[13] Thus, the third factor weighs against tolling.

The fourth factor, prejudice to Defendant, is somewhat equivocal. On one hand, a delay of five or six months may not have materially impacted the Government's ability to respond. On the other, Gonzalez's claim concerns a May 2016 surgery; any additional delays for such temporally distant events risks dispersion of witnesses and diminished memories.[14] With four factors weighing against tolling, even assuming neutrality for the fourth factor, the balance clearly counsels against equitably excusing Gonzalez's tardy filing. Thus, the FTCA statute of limitations, § 2401(b), additionally and independently warrants summary judgment for the Government. *Cf. Jourdan v. Jabe*, 951 F.2d 108, 109 (6th Cir. 1991) ("[W]hile pro se litigants may be entitled to some latitude when dealing with sophisticated legal issues, acknowledging their lack of formal training, there is no cause for extending this margin to straightforward procedural requirements that a layperson can comprehend as easily as a lawyer.").

---

[13] For instance, Gonzalez claims that he was in SHU until March 3, 2018. *See* DE 36. For starters, "[c]ourts have consistently held that general allegations of placement in segregation and lack of access to legal materials are not exceptional circumstances warranting equitable tolling[.]" *Andrews v. United States*, No. 17-1693, 2017 WL 6376401, at *2 (6th Cir. Dec. 12, 2017) (citing *Paulcin v. McDonough*, 259 F. App'x. 211, 213 (11th Cir. 2007); *United States v. Fredette*, 191 F. App'x. 711, 713 (10th Cir. 2006)); *see also Muhammad v. United States*, 735 F.3d 812, 815 (8th Cir. 2013) (finding that "five-month confinement in the Special Housing Unit" did not "constitute an extraordinary circumstance warranting the application of equitable tolling"). Even if SHU placement constituted a legitimate filing obstruction, Gonzalez also fails to account for his lack of diligence from March 4, 2018, through June 1, 2018, when his filing deadline expired. Further, as Defendant notes, most of the "lockdown" periods that Gonzalez cites (roughly 70%) occurred **after** expiration of the limitations period. *See* DE 35 at 4. The only exception is Gonzalez's claim that USP-Pollock was locked down from May 8, 2018, through June 20, 2018. *Id.* Yet, Plaintiff fails to explain why, if diligently pursuing his claims, he could not have filed during the nearly two-month period prior to the next alleged lockdown (on August 17, 2018). *Id.*

[14] The Court also notes that Congress explicitly established a brief limitations period under the FTCA and, thus, implied a substantial Government interest in promptness and considerable diligence for an FTCA plaintiff.

For these numerous, overlapping reasons, the Court **GRANTS** DE 26 and will enter a separate judgment.

This the 31st day of March, 2020.

Signed By:
*Robert E. Wier* /s/ REW
United States District Judge